

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Philip Motsay*  
*Assistant United States Attorney*  
*Philip.Motsay@usdoj.gov*

*Suite 400*  
*36 S. Charles Street*  
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4812*  
*MAIN: 410-209-4800*  
*FAX: 410-962-0717*

August 5, 2025

**VIA ECF**

The Honorable James K. Bredar  
United States District Judge  
United States District Court  
for the District of Maryland  
101 West Lombard Street  
Baltimore, MD 21201

Re:   *United States v. Brian Cleveland Gill* # 1:23-cr-00100-JKB  
         Sentencing Memorandum

Dear Judge Bredar:

The Government writes this letter in advance of the sentencing of Brian Cleveland Gill, which is currently scheduled for August 21, 2025, at 11:00 a.m.

On February 27, 2025, the Court accepted Defendant's guilty plea to Count 2 of the Indictment, charging him with Wire Fraud Affecting a Financial Institution, 18 U.S.C. § 1343, and Count 6 of the Indictment, charging him with Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1).

As set forth more fully below, the Government requests that the Court sentence the Defendant to 87 months of imprisonment, to be followed by three years of supervised release, and order restitution totaling $930,853.74 to be paid to the victims in this case, and special assessments totaling $200.

### I.  Background

As detailed in the parties' plea agreement filed on February 27, 2025 (ECF No. 74), and the Presentence Investigation Report (PSR) filed on April 26, 2025 (ECF No. 79), for over a year––beginning in April 2020 and continuing through June 2021—the Defendant repeatedly defrauded the United States Small Business Administration and various financial institutions to obtain fraudulent Paycheck Protection Program (PPP) loans and Economic Injury Disaster Loans (EIDL).

Defendant prepared and submitted EIDL and PPP applications for businesses that included false information. One PPP application was submitted for a forfeited shell entity. Another PPP application was submitted for a company where Defendant held no ownership interest. The PPP applications included false and fabricated IRS forms or bank statements. These forms or statements were submitted by Defendant to substantiate the false representations made in the applications.

Defendant used the fraudulently obtained funds to obtain a cashier's check to Intuit Payroll—even though Defendant's businesses had no employees on payroll and Defendant had no intention to spend the funds on payroll. Defendant also used the fraudulently obtained funds to purchase a 2015 Tesla 4S vehicle, make investments with Charles Schwab and STASH, and obtain a life insurance annuity with EquiTrust Life Insurance Company.

Defendant's conduct involved multiple PPP loans and EIDLs, with intended losses exceeding $2 million, and actual losses of $930,853.74.

## II.   Guidelines Computation

The Defendant's criminal history falls within Category III. ECF No. 79 at 22 ¶ 90. Thus, the applicable guideline imprisonment range as to Count Two is 63-78 months of imprisonment. U.S.S.G. § 5A (Sentencing Table). The applicable guideline imprisonment range as to Count Six is 24 months. U.S.S.G. § 2B1.6; 18 U.S.C. § 1028A(a)(1).

Defendant's guidelines range for both offenses is 87-102 months.

## III.   Sentencing Factors Under 18 U.S.C. § 3553(a)

The sentencing factors under 18 U.S.C. § 3553(a) support a sentence of 87 months of imprisonment.

Such a sentence is necessary to reflect the seriousness of the offense and protect the public from further crimes of the Defendant, as well as to afford adequate deterrence, promote respect for the law, and provide just punishment. It also accounts for Defendant's history and characteristics.

Regarding the nature and circumstances of the offense, there is no question that Defendant's offense is serious. Defendant lied on multiple loan applications, he prepared bogus documents to be submitted with PPP applications, and Defendant did so during the most traumatic global pandemic in a century. Defendant attempted to steal over $2 million in public funds that were intended to help our nation's small businesses avoid economic collapse. The total actual loss figure of $930,853.74 is also sizeable. And Defendant stole these funds to line his own pockets. These funds—meant to aid struggling businesses—were instead used for personal expenditures and investments. Simply put, Defendant saw an opportunity for "free money" from the Government, and he took it.

What's more, Defendant's offenses were not the result of a momentary lapse of judgment by an otherwise law-abiding citizen. These were not split-second decisions made under financial duress. Just the opposite; when the opportunity arose, Defendant wrongfully took advantage of a relief program meant to aid victims of an unprecedented public health and economic crisis by obtaining and attempting to obtain fraudulent PPP and EIDL loans. His actions were calculated, sophisticated, and protracted.

Defendant's choice to misappropriate PPP and EIDL funds funneled critical resources away from legitimate businesses that did not survive the pandemic. Indeed, in the early days of the COVID-19 pandemic, people stayed home, businesses closed their doors, and workers were laid off. America was effectively shut down. In the face of chaos and uncertainty, the Government moved quickly to establish pandemic relief programs, like PPP and EIDL, for suffering people and businesses. And to get money quickly to people who needed it most, these pandemic relief programs relied on applicants to tell the truth. But in the face of this crisis, Defendant did the opposite—he saw an opportunity to enrich himself based on lies, an opportunity that he took again and again. These pandemic loan programs were intended to be a lifeline, not a payday. The nature and circumstances of the offense warrant the Government's recommended sentence.

The Government's recommended sentence also reflects the seriousness of Defendant's misconduct, provides just punishment, and promotes respect for the law. Defendant's actions diverted vital funds away from eligible recipients and eroded public trust in critical relief efforts. The PPP was designed to be a safety net to keep the nation's small business in operation during the most significant global pandemic in 100 years. Unfortunately, due to the conduct of people like Defendant, a staggering amount of pandemic relief funds did not reach the businesses and employees that needed those funds most. The SBA Office of Inspector General estimates that as much as 17% of the disbursements from pandemic-relief programs like the PPP went to fraudulent applicants like Defendant.[1] Indeed, the PPP had a finite pool of money; during the first round of the PPP, the program was depleted in just 13 days.[2] The COVID-19 pandemic was not the first, nor will it be the last disaster or pandemic that this country encounters. Given the high levels of fraud in connection with these types of funds, there is a particularly substantial need to promote respect for the law and provide just punishment for the offense.

---

[1] *See* Small Business Administration, *COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape*, https://www.sba.gov/document/report-23-09-covid-19-pandemic-eidl-ppp-loan-fraud-landscape ("We estimate that SBA disbursed over $200 billion in potentially fraudulent COVID-19 EIDLs, EIDL Targeted Advances, Supplemental Targeted Advances, and PPP loans. This means at least 17 percent of all COVID-19 EIDL and PPP funds were disbursed to potentially fraudulent actors.") (last visited April 11, 2025).

[2] *See* Lisa Desjardins, *It took 13 days for the Paycheck Protection Program to run out of money. What comes next?*, PBS News (April 16, 2020, 2:43 PM)*,* https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next .

The recommended sentence will also serve as specific deterrence for Defendant. Defendant has demonstrated that a criminal justice sentence does not deter criminal conduct. *See* ECF No. 79 at 13 ¶ 41. And, examining the circumstances of Defendant's offenses, Defendant had numerous opportunities to stop his criminal conduct. But instead, it went on for over a year. A long prison sentence is necessary to protect the public from him. Indeed, Defendant is far less likely to commit crimes while incarcerated. Defendant has made clear that, when given the opportunity to lie to get money, he will take it. The necessity for a significant prison sentence to prevent Defendant from committing additional fraud is made more apparent by the efforts he took to conceal his involvement in the instant crimes, including using the name of a relative to obtain PPP loans, using the name of another relative on a bank account to receive PPP funds, and using the name of a company that he had no interest in to submit a PPP loan. Defendant also used and attempted to use a paper trail to hide his crimes. In other words, Defendant understands both how to commit complex financial crimes and make his crimes more difficult to detect.

The need to avoid unwarranted sentencing disparities is also important in this case. *See* ECF No. 79 at 32. It is notable that pandemic loan fraud cases involving criminal conduct like the offense conduct at issue here have routinely yielded significant sentences. *See also United States v. Joseph Marsell Cartlidge, Eric Alexander McMiller, and David Christopher Redfern*, 1:20-cr-00340-WO (M.D.N.C. 2022) (receiving 72 months, 66 months, and 60 months of imprisonment, respectively, for submitting fraudulent PPP and EIDL applications with false and fraudulent documentation, seeking over $2 million and obtaining approximately $1.2 in loans); *United States v. Izzat Freitekh and Tarik Freitekh*, 3:20-CR-00435-FDW-DCK (W.D.N.C. 2022) (receiving 48 and 87 months of imprisonment for submitting fraudulent PPP applications, and obtaining $1.75 million in loans).

Finally, regarding Defendant's history and characteristics, it is true that the instant offense is Defendant's first federal conviction, that the crime is non-violent, and that Defendant apparently is a present father to his children. While these points merit consideration by the Court in determining the appropriate sentence, they do not support a variant sentence. Defendant has benefitted from numerous positive factors in his life, including a loving and supporting family. There are no extenuating or mitigating factors in this case that warrant a downward variance from the Guidelines. ECF No. 79 at 24 ¶ 106.

Defendant's history and characteristics also serve to underscore the need for a serious sentence. Defendant's criminal conduct has escalated later in life. *See* ECF No. 79 at 10–13, 28. Defendant also used his education and family relationships to further his criminal behaviors, ultimately harming the people he cares about the most. *See id.* 17 ¶ 61; 18 ¶ 63. The present circumstances also are not the first instance where Defendant has abused his relationships to steal large sums of money. *See* ECF No. 79 at 28; *State of Maryland v. Brian Cleveland Gill*, Case No. CT180135X. Defendant's conduct in his State theft case was comparable to this case. ECF No. 79 at 12. Defendant has shown that his criminal conduct comes at the expense and trust of those closest to him.

### IV. Restitution

The Mandatory Victim Restitution Act requires the Court to order restitution when a defendant is convicted of "an offense against property . . . including any offense committed by fraud or deceit," and "in which an identifiable victim" suffered a pecuniary loss. 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii), (c)(1)(B). A victim is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id.* § 3663A(a)(2). "The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." *Id.* § 3663(a)(3).

Defendant owes $930,853.74 to two victims – the SBA and Cross River Bank. ECF No. 74 at 7–8 ¶ 10. As a part of his plea, Defendant agreed "pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation." ECF No. 74 at 7 ¶ 10. Defendant stipulated to the following facts:

#### A. The SBA – EIDLs

Defendant admitted that he caused the SBA to disburse a $100 UCC filing fee, in addition to $110,500 into his BB&T account, in relation to his first EIDL application. ECF No. 74 at 13 ¶ E. In relation to his second EIDL application, Defendant admitted that the SBA disbursed an $8,000 EIDL advance. ECF No. 74 at 14 ¶ I. In total, the SBA disbursed $118,600 as a result of Defendant's conduct. A copy of the documentation supporting these disbursements is attached as sealed **Exhibit 1**.

#### B. Cross River Bank – PPP Loans

In reference to his first PPP loan, Defendant admitted that he caused Cross River Bank to disburse $518,733 to his Bank of America account ending in 5377, of which Defendant retained $268,520.74. *See* ECF No. 74 at 13 ¶ F. In reference to his second PPP loan, Defendant admitted that he caused Cross River Bank to disburse $543,733 to his Navy Federal Credit Union account. *See* ECF No. 74 at 13 ¶ G. In total, Cross River Bank disbursed $812,253.74, because of Defendant's conduct. A copy of the documentation supporting these disbursements is attached as sealed **Exhibits 2 and 3**.

#### C. Total Restitution

The total restitution owed is $930,853.74.

The outstanding balance of restitution, while large, is not insurmountable. Defendant is an educated and able-bodied individual, who is capable of both maintaining employment and paying restitution. *See* ECF No. 79 at 20 ¶ 77, 20–22 ¶ 83. An order of restitution in this case is both appropriate and warranted.

This Court has authority to specify the manner that restitution is to be paid. 18 U.S.C. § 3664(i). The United States requests that the Court order that restitution payments be prioritized as follows: (1) Cross River Bank, and (2) the SBA.

### V. Procedural Matters for Sentencing

At sentencing, the Government intends to call: (1) Victim M.G., and (2) T.B., a representative of victim Briggs and Briggs, LLC. The Government anticipates that these witnesses will provide victim impact statements. If the victims choose to address the Court in person, the Government does not anticipate that statements will last longer than 10 minutes in total. The Government estimates that its presentation for sentencing will last approximately 30 minutes.

### VI. The Government's Sentencing Recommendation

Considering all the factors set forth above, the Government recommends that the Court sentence the Defendant to a term of imprisonment of 87 months of imprisonment[3] to be followed by three years of supervised release. Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing under the Section 3553(a) factors.

The Government also asks that the Court enter a money judgment in the amount of $930,853.74, order restitution in the same amount, to be due and payable immediately, and special assessments totaling $200.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Digitally signed by
PHILIP MOTSAY
Date: 2025.08.05
10:26:31 -04'00'

Philip Motsay
Assistant United States Attorney

Cc:  Rosana Chavez, Esquire (by ECF)
     Carissa Perez, U.S. Probation Officer (by electronic mail)

---

[3] Defendant served five days in pretrial detention between March 30, 2023, and April 3, 2023. *See* ECF Nos. 14, 16.